OPINION
Antonio DeLeon appeals from his conviction and sentence for unlawful possession of a dangerous ordnance, having weapons while under disability, and possession of cocaine in an amount exceeding five hundred grams, as well as the automatic firearm specifications accompanying those offenses.
The evidence presented at trial by the State demonstrates that on November 14, 1997, twelve-year old Tashia Benson witnessed a shooting near the corner of Emerson and Fairview Avenues in Dayton. Prior to February of 1998, Detective Doyle Burke of the Dayton Police Department showed four separate photo-spreads to Ms. Benson in an attempt to identify the shooter. Ms. Benson was unable to identify the shooter from those photo-spreads.
Around mid-February 1998, Det. Burke received information from a citizen informant identifying the shooter as Antonio DeLeon. After interviewing the informant and corroborating the information received, Det. Burke obtained a photo of DeLeon and constructed a photo-spread with DeLeon's photo and the photos of five other similar-looking individuals. On March 4, 1998, Det. Burke showed this photo-spread to Ms. Benson and she identified DeLeon as the shooter. The previous photo-spreads shown to Ms. Benson did not contain a photo of DeLeon.
On March 5, 1998, Det. Burke obtained a warrant for DeLeon's arrest based upon Ms. Benson's identification and the information he received from the citizen informant. At about 5:00 p.m. that day, Det. Burke, along with other members of the homicide squad and violent crimes task force, attended a briefing at the Dayton Police Department, concerning the apprehension of DeLeon.
At approximately 6:00 p.m., Lieutenant Charles Gift and Det. Cass took up surveillance positions approximately two buildings south of the most likely location where DeLeon could be found, at 4337 Fair Oaks. Lt. Gift noticed that both of DeLeon's current automobiles, a white Monte Carlo and a green Mitsubishi Galant, were parked in the parking lot behind 4337 Fair Oaks.
At approximately 6:30 p.m., Lt. Gift saw DeLeon exit 4337 Fair Oaks carrying a black leather satchel, which DeLeon ultimately placed in the trunk of his Mitsubishi. DeLeon then got into the Mitsubishi and pulled out of the driveway.
Lt. Gift was in radio contact with other police officers and informed them that DeLeon was exiting the driveway. Det. Thomas Bilinski, from his position on Fair Oaks, observed the Mitsubishi pull out of the driveway and proceed South on Fair Oaks. Det. Bilinski could clearly see that the driver was DeLeon.
Det. Burke also heard Lt. Gift's broadcast, and from his position on Fair Oaks he saw the Mitsubishi drive past. Det. Burke also identified the driver as DeLeon. Det. Burke followed DeLeon, looking for the safest place to execute the arrest warrant and limit the possibility of a vehicular pursuit.
DeLeon subsequently stopped at a traffic light behind other cars in the 2400 block of Catalpa Drive, near Hillcrest Avenue. Det. Burke blocked DeLeon's car from the rear and executed the warrant for DeLeon's arrest. Det. Dunsky arrived minutes later and assisted Det. Burke in handcuffing and arresting DeLeon.
Both Det. Dunsky and Det. Burke observed a semi-automatic handgun with an extended magazine on the passenger seat and a box of digital scales on the back seat of the Mitsubishi. Det. Dunsky searched DeLeon incident to his arrest and recovered approximately $1,700 in cash. DeLeon was transported to the police station and was later interviewed by Det. Burke and Det. Davis.
After observing the weapon and the scales in the Mitsubishi, and recovering the large amount of cash from DeLeon's person, Det. Dunsky called for a drug detection dog. The drug dog aggressively alerted to the odor of narcotics inside DeLeon's car. Accordingly, Det. Dunsky had the Mitsubishi towed to the police station and obtained a search warrant.
A search of the trunk of DeLeon's car revealed over seven hundred grams of cocaine hidden inside the black satchel, individually packaged in twenty-seven one ounce bags, and a blue nylon lunch bag containing over $11,000 in cash. A search warrant was also obtained and executed for 4337 Fair Oaks. Numerous semiautomatic weapons located throughout that apartment were seized. Police also recovered digital scales, plastic baggies, baking soda, kilo wrappers bearing cocaine residue and DeLeon's fingerprints, crack cocaine, and documents showing DeLeon's possessory interest in that apartment.
DeLeon was tried before a jury and found guilty of unlawful possession of a dangerous ordnance with an automatic firearm specification, having weapons while under disability with a firearm specification, and possession of over five hundred grams of cocaine with an automatic firearm specification. These offenses were based on the items recovered by police from DeLeon's car. The jury found DeLeon not guilty of possession of criminal tools, possession of crack cocaine, having weapons under disability and unlawful possession of a dangerous ordnance. Those charges were based on the items recovered by police during their search of 4337 Fair Oaks.
The trial court sentenced DeLeon to one year imprisonment for unlawful possession of a dangerous ordnance, five years for having weapons while under disability, and ten years for possession of cocaine, all sentences to be served consecutively. In addition, the trial court merged the automatic firearm specifications and imposed one consecutive six year term, for a total aggregate sentence of twenty-two years.
From his convictions and sentences DeLeon has timely appealed to this court, presenting nine assignments of error for our review.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT'S DECISION ADMITTING IRRELEVANT AND HIGHLY PREJUDICIAL TESTIMONY REGARDING THE PRICES FOR VARIOUS QUANTITIES OF COCAINE OVER OBJECTION WAS PREJUDICIAL TO THE RIGHTS OF THE DEFENDANT.
A trial court has broad discretion with respect to the admission or exclusion of evidence, and its decision in such matters will not be reversed on appeal unless the trial court has abused its discretion and material prejudice has resulted therefrom. State v. Hymore (1967), 9 Ohio St.2d 122. The term abuse of discretion connotes more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v.Adams (1980), 62 Ohio St.2d 151.
During the State's case-in-chief the trial court permitted Det. Dennis Castle to testify, over DeLeon's objection, about the "street value" in Dayton of various quantities of cocaine. Det. Castle was also allowed to explain how larger quantities of cocaine such as a kilogram are broken down into smaller amounts by adding a cutting agent such as baking soda, and then re-packaged for sale in smaller one ounce or one gram amounts, substantially increasing the value of that original kilogram.
DeLeon argues that the trial court abused its discretion in admitting this testimony because it is not relevant to whether hepossessed cocaine, which is what DeLeon was charged with, not trafficking or the sale of cocaine. The standard for relevant evidence is defined in Evid.R. 401:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
DeLeon further argues that because this testimony unfairly portrays him as a drug trafficker or seller of cocaine, it inflamed the passions and prejudice of the jury such that its probative value, if any, was substantially outweighed by the danger of unfair prejudice, and thus the trial court should have excluded this evidence. Evid.R. 403(A).
The State responds that in light of the various items that police recovered from the apartment at 4337 Fair Oaks including digital scales, plastic baggies, baking soda, and kilo wrappers with cocaine residue and DeLeon's fingerprints on them, Det. Castle's testimony was relevant to prove that DeLeon knowinglypossessed the twenty-seven bags of cocaine, each weighing about one ounce, found inside the black satchel that DeLeon had placed in his car. The State argues that the jury could reasonably infer from that evidence that DeLeon had himself broken down a large quantity of cocaine and repackaged it in smaller amounts. The State further argues that because the jury previously heard evidence about DeLeon's prior conviction for aggravated drug trafficking, the probative value of Det. Castle's testimony was not substantially outweighed by the danger of unfair prejudice.
We conclude that Det. Castle's testimony about the "street value" of various quantities of cocaine was irrelevant to prove the charge of drug possession because it failed to add anything of consequence to the determination of whether DeLeon "knowingly possessed" cocaine, as the State had charged. Nevertheless, any error in the admitting of this evidence was harmless beyond a reasonable doubt in view of the overwhelming evidence of DeLeon's guilt presented by the State on the cocaine possession charge. That evidence included police officers having observed DeLeon carry the satchel full of cocaine out of the apartment at 4337 Fair Oaks and over to his car, place it in the trunk, driving away.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT'S RULING ADMITTING IRRELEVANT AND HIGHLY PREJUDICIAL TESTIMONY REGARDING THE FACT THAT MONEY OBTAINED AFTER HIS ARREST WAS FORFEITED TO FEDERAL GOVERNMENT, OVER OBJECTION, WAS ERRONEOUS AND PREJUDICIAL TO THE RIGHTS OF THE DEFENDANT.
The trial court permitted Det. Gary Dunsky to testify over DeLeon's objection that the $1,700 in cash recovered from DeLeon's person at the time of his arrest was "forfeited to the Federal government." DeLeon argues that this testimony was not relevant to prove that he knowingly possessed cocaine. Evid.R. 401, 402. Morever, the probative value of this evidence, if any, was substantially outweighed by the danger of unfair prejudice, and hence the trial court should have excluded it. Evid.R. 403(A). The State responds that its questioning of Det. Dunsky about the forfeiture of this money was intended to clarify where this money was presently located, a matter which the defense inquired about during cross-examination of Dunsky.
The "whereabouts" of the money seized from DeLeon at the time of his arrest is not a fact that is of any consequence to the determination of whether DeLeon "knowingly possessed cocaine." Thus, the State's proffered explanation cannot justify the admission of this testimony by Det. Dunsky. However, even assuming that the trial court erred in admitting this evidence, we conclude that the error was harmless beyond a reasonable doubt. Given the overwhelming evidence of DeLeon's guilt on the cocaine possession charge, discussed in the previous assignment of error, there is no reasonable possibility that this testimony by Det. Dunsky contributed to DeLeon's conviction.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING MAXIMUM, AS WELL AS CONSECUTIVE SENTENCES BY INJECTING ITS VIEW THAT THE DEFENDANT WAS GUILTY OF CERTAIN CHARGES AND CONSIDERING EVIDENCE RELATED TO THESE CHARGES, NOTWITHSTANDING THE JURY'S VERDICT FINDING THE DEFENDANT NOT GUILTY OF THESE SAME OFFENSES.
DeLeon argues that the trial court abused its discretion in imposing maximum and consecutive sentences that were based in part on evidence relating to alleged offenses of which the jury found Deleon not guilty.
A trial court has broad discretion in imposing a sentence that is within statutory limits and its decision in such matters will not be disturbed on appeal unless the trial court has abused its discretion. Toledo v. Reasonover (1965), 5 Ohio St.2d 22;Columbus v. Jones (1987), 39 Ohio App.3d 87, State v. Patterson
(1996), 110 Ohio App.3d 264. An abuse of discretion connotes more than an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams, supra.
At the sentencing proceeding, while explaining its findings relative to the imposition of maximum and consecutive sentences, the trial court remarked:
 . . . [Appellant] was on parole while he was observed leaving an apartment that can only (sic) described as a location for drugs and guns, since there was no furniture in the apartment. There were two empty kilo bags, one having defendant's fingerprints on them, a set of digital scales, and numerous weapons, both loaded and unloaded at the time [Appellant] — the offender committed the offense.
DeLeon concedes in his appellate brief that the sentences imposed on him by the trial court were within statutory limits, and that in imposing sentence the trial court considered the necessary sentencing criteria in R.C. 2929.12, R.C. 2929.13 and R.C. 2929.14. However, DeLeon argues that the trial court's remarks about his presence at a drug house where numerous weapons were found, evidence which relates solely to offenses the jury found DeLeon not guilty of committing, reflects the trial court's belief that DeLeon was guilty of those offenses, and to that extent is in conflict with the jury's verdict. DeLeon contends that the sentencing decision was at least in part the result of the trial court's own views that DeLeon should have been convicted of the offenses of which he was acquitted.
It is an abuse of discretion for a trial court to increase a defendant's penalty because the court feels the jury was mistaken in finding the defendant not guilty of another charged offense. In sentencing, the trial court must give no consideration to evidence tending to indicate defendant to be guilty of the offense for which he was found not guilty by the jury. Columbus v. Jones,supra. If in imposing sentence a trial court considers evidence concerning an acquitted charge, the trial court has abused its discretion even if the sentence imposed is within statutory guidelines. State v. Patterson, supra.
Pursuant to R.C. 2929.14(C), a trial court may impose maximum sentences upon offenders who pose the greatest likelihood of committing future crimes. R.C. 2929.12(D) sets forth a list of factors which the trial court must consider in determining whether the offender is likely to commit future crimes. One of those factors is whether at the time of committing this offense the offender was under some form of post-release control for an earlier offense. R.C. 2929.12(D)(1). The implication which the finding creates is that, having violated the terms of his parole, the defendant is likely to re-offend unless a more severe sentence is imposed.
DeLeon was on parole from a prior conviction for aggravated trafficking when he was seen emerging from the apartment at 4337 Fair Oaks, where drugs, drug paraphernalia, and guns were later found. His association with that location, quite apart from whether he had a sufficient possessory interest in its contents to convict him of the alleged offenses connected with it, demonstrate a parole violation. The court was entitled to consider that fact when it imposed its sentence on DeLeon for the crimes of which he was convicted, consistent with the requirements of R.C.2929.12(D)(1).
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON GROUNDS THAT THE DEFENDANT'S ATTORNEYS FAILED TO PROPERLY PREPARE FOR TRIAL AND THE COURT FAILED TO PROTECT THE DEFENDANT'S RIGHTS, INCLUDING HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, THEREBY DEPRIVING HIM OF HIS RIGHTS TO A FAIR TRIAL AND TO DUE PROCESS OF LAW.
DeLeon discharged his defense attorney and requested substitute counsel approximately two months before his trial began. DeLeon's new trial counsel took over on or about August 7, 1998. One week prior to trial, on September 29, 1998, defense counsel requested and received a continuance of the trial until November 16, 1998, arguing that he needed additional time to prepare for trial.
On or about November 10, 1998, defense counsel filed a second motion seeking a continuance of the trial. A hearing was held November 12, 1998, at which time defense counsel stated that they needed additional time to prepare. Specifically, defense counsel noted that the State had recently re-indicted DeLeon adding another charge and additional specifications, and defense counsel needed time to prepare and argue a motion to dismiss that new indictment. Additionally, defense counsel noted that they needed additional time to conduct independent laboratory testing of some items and to interview the State's most recently identified witness. Defense counsel also noted that simultaneously with their trial preparation they were preparing an appellate brief in this same case as a result of the State's appeal from the trial court's ruling ordering disclosure of the confidential informant. Defense counsel requested a two-week continuance.
The trial court denied defense counsel's request for another continuance. However, the trial court ordered the State to immediately make available to DeLeon the materials necessary for independent laboratory testing. The trial court also indicated that it would promptly enter a decision on DeLeon's motion to dismiss the new charges prior to trial, and that it would assist defense counsel with the deadline for filing their brief in the court of appeals. The trial court noted that if need be it could delay the commencement of trial for "a few days."
On November 17, 1998, shortly before jury selection began, a hearing was held in chambers concerning an affidavit of bias and prejudice DeLeon had filed against the trial judge, based upon the court's refusal to grant a further continuance of his trial. During that hearing DeLeon accused his defense attorneys of not being adequately prepared for trial. Defense counsel confirmed for the trial court that they were not adequately prepared and could not effectively represent DeLeon. The trial judge subsequently elected to recuse himself, although very reluctantly, and decided to transfer this case to another judge. The court observed that it had been "hoodwinked" in this matter, and that defense counsel had engaged in highly unprofessional conduct in failing to prepare for trial.
Counsel for both parties immediately reported to the new trial judge, who after discussions with counsel indicated that the court would be available to commence trial the following day, November 18, 1998. The trial judge stated that, after speaking with counsel, it was her understanding that all attorneys were prepared to proceed with trial. While the court expressed its willingness to delay trial one more day if defense counsel was not ready, the defense attorneys indicated that they preferred to go forward on November 18, 1998.
In State v. Bradley (1989), 42 Ohio St.3d 136, 141-142, the Ohio Supreme Court set forth the test for ineffective assistance of trial counsel:
 "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 After much discussion, the Strickland court set forth the standards to be used in judging whether counsel has been ineffective and whether a criminal defendant has been prejudiced thereby. As for ineffectiveness, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688, 104 S.Ct. at 2064. The court recognized that there are "* * * countless ways to provide effective assistance in any given case. * * *" Id. at 689, 104 S.Ct. at 2065. Therefore, the court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential. * * *" Id. In addition, "[b]ecause of the difficulties inherent in making the evaluation, a court must [538 N.E.2d 380] indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
[101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981)." Strickland, supra, 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694,
Our review of the record in this case causes us to conclude that no substantial violation of defense counsel's essential duties to their client has been demonstrated. Defense counsel candidly reported to the trial court that they were not ready to proceed to trial, and outlined their reasons why. Counsel requested a brief continuance, indicating that even two weeks would suffice. Counsel represented to the trial court that they were not prepared for trial, in an effort to protect DeLeon's rights. While the trial court refused to grant the requested two week continuance, it accommodated defense counsel in other ways so they could complete their trial preparation. When the trial court inquired of DeLeon whether he would try to fire his attorneys because they were not properly representing him, DeLeon responded "no."
Although defense counsel represented to the original trial judge that they were not prepared to proceed with trial, after the original judge recused himself and transferred this case to a different judge, defense counsel indicated to the new judge that they were prepared to proceed with trial the following day. Whether they were, in fact, unprepared must be determined from the record.
Defense counsel were able to obtain an acquittal on all offenses charging that DeLeon knowingly possessed various items police discovered in the apartment at 4337 Fair Oaks, including drugs, guns, and drug paraphernalia, despite the fact DeLeon's fingerprints were on some of those items and documents were discovered linking DeLeon to that apartment. DeLeon was found guilty of possessing which were recovered from his car at the time of his arrest. Police had observed DeLeon carry the satchel containing the cocaine from the apartment at 4337 Fair Oaks and place it in his car trunk. The handgun was found lying on the front seat next to DeLeon when police stopped him. DeLeon admitted that he carried that weapon for protection. Under these circumstances, it is difficult to imagine what more defense counsel could have done to defend DeLeon on these charges. Clearly, in preparing for this trial and in representing DeLeon during the trial defense counsel did far more than simply "be a warm body." State v. Biggers (1997), 118 Ohio App.3d 788. On this record no substantial violation of defense counsel's essential duties to DeLeon has been shown.
In addition to complaining about counsel's preparedness for trial, DeLeon further asserts that defense counsel performed deficiently because they did not call any witnesses on his behalf at trial. However, the failure to call witnesses to testify on Defendant's behalf at trial does not constitute deficient performance unless that testimony would have assisted the defense.State v. Williams (1991), 74 Ohio App.3d 686.
DeLeon has not identified which witnesses defense counsel should have called, but didn't, much less what their testimony might have been or how that might have assisted his defense. Accordingly, neither deficient performance by defense counsel nor resulting prejudice to DeLeon has been demonstrated. Ineffective assistance of trial counsel has not been shown.
The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S SECOND MOTION FOR A CONTINUANCE IN VIEW OF THE STATEMENTS MADE BY THE DEFENDANT, THE ATTORNEYS FOR THE DEFENDANT, AND THE COURT'S OWN CONCLUSIONS AS TO DEFENSE COUNSEL'S REPRESENTATION OF THE DEFENDANT-APPELLANT.
In this assignment of error, DeLeon again complains about defense counsel's lack of preparedness for trial. DeLeon argues here that the trial court abused its discretion in denying his second request for a continuance of the trial. In support of his argument DeLeon points out that as a result of the discussions which took place between DeLeon, his attorneys, and the trial court on November 12, 1998 and again on November 17, 1998, the trial judge was well aware that defense counsel were not prepared for trial. While the trial court admonished defense counsel for that, it failed to protect DeLeon's rights by denying the requested continuance.
The decision whether to grant or deny a motion for a continuance lies within the sound discretion of the trial court, and its decision will not be reversed on appeal absent a showing that the trial court abused its discretion. State v. Grant
(1993), 67 Ohio St.3d 465; State v. Unger (1981), 67 Ohio St.2d 65. In reviewing the trial court's decision a balancing test is employed which weighs the competing considerations. Weighed against any potential prejudice to a defendant are the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Unger, supra.
 In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors depending on the unique facts of each case.
Id., at 67.
Defense counsel had previously been granted one continuance of several weeks to prepare for trial. Six days before trial, DeLeon sought another continuance of several weeks for trial preparation. According to DeLeon, additional time was needed to prepare a motion to dismiss recently added charges, obtain independent laboratory analysis, and because counsel was simultaneously preparing an appellate brief in this same case and facing a filing deadline. The State objected.
As we noted in the previous assignment of error, although the trial court denied the requested two-week continuance, it did accommodate defense counsel by expediting the independent lab analysis and helping to postpone their appellate brief deadline so that defense counsel could complete their trial preparation. Moreover, the court noted that if need be, it could delay trialfor a few days. We further note that while defense counsel represented to the original trial judge assigned to this case that they were not prepared for trial and needed a continuance of "a handful of days," after that judge recused himself and this case was transferred to another judge, defense counsel then indicated that they were prepared to proceed with trial. State v. Price
(1973), 34 Ohio St.2d 43.
DeLeon was convicted of offenses arising from his possession of the evidence that police found in his car, some of which they saw him put there. The evidence of those offenses was overwhelming. He was acquitted of offenses arising from his possession of the evidence found in his apartment, which was almost as overwhelming. His attorneys obviously performed very effectively in representing him. There is no basis to find that DeLeon was prejudiced when the trial court denied his motion to continue the trial.
The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN THE ADMISSION OF CERTAIN DOCUMENTARY EVIDENCE WHICH WAS HEARSAY AND WAS NEITHER PROPERLY AUTHENTICATED OR IDENTIFIED, ALL OF WHICH WAS PREJUDICIAL TO RIGHTS OF THE DEFENDANT.
The State offered, and the trial court admitted over DeLeon's objections, articles of documentary evidence that were recovered from the car that DeLeon was driving when he was arrested and from the apartment at 4337 Fair Oaks for the purpose of showing DeLeon's possessory interests in the car and the apartment and, by inference, the contraband and guns that were found therein. DeLeon complains that the documentary evidence was not property authenticated and was barred by Evid.R. 802, the rule against hearsay.
DeLeon was acquitted of the charges arising from the articles police found in their search of the apartment. Therefore, any error in admitting them into evidence was harmless.
DeLeon complains about two types of documentary evidence found in the car. One, State's exhibit 50, purported to be a receipt for the sale of the car to DeLeon and another person. The other, State's exhibit 51, were papers found inside the satchel that DeLeon was seen carrying which, according to the State, connected DeLeon with the drugs in the satchel.
Hearsay is an out-of-court statement or other declaration that is offered to prove the truth of its contents. Evid.R. 801(C). Hearsay evidence is generally inadmissible. Evid.R. 802. However, not every out-of-court declaration offered to prove the truth of its contents is "hearsay." Evid.R. 801(D) defines "admissions" and provides: "A statement is not hearsay if . . . (2) [t]he statement is offered against a party and is . . . (b) a statement of which he has manifested his adoption or belief in its truth."
DeLeon manifested his belief in the truth of the declaration in the sales receipt for the car by keeping it in the car he was driving. He manifested his belief in the truth of the declaration of the documents in the satchel by carrying them about with him. Thus, they are admissions of a party-opponent when offered by the State for these purposes, and are not inadmissible "hearsay" for purposes of Evid.R. 802.
DeLeon also complains that the sales receipt for the car was not properly authenticated. "Authenticity" is simply a requirement that an article of evidence must be proved to be what on its face it purports to be. That is generally satisfied by witness identification. The extrinsic evidence requirement is waived by Evid.R 902 for articles that are defined therein as "self-authenticating." Division (7) of that rule includes "[i]nscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin."
State's Exhibit 50 purports to be a bill of sale for the car that DeLeon was driving when he was arrested. It indicates that the car was sold to DeLeon and another person by Mel Farr Lincoln-Mercury, a Dayton auto dealer. The document is a printed form that bears the dealer's name and address. That printed material constitutes an "inscription" for purposes of Evid.R. 902(7), which renders it self-authenticating. It was otherwise admissible on the testimony of police officers that it was found in the car that DeLeon was driving when he was arrested.
The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS ON GROUNDS THAT THE ARREST WARRANT, TO THE EXTENT IT WAS BASED ON AN EYEWITNESS IDENTIFICATION OF THE DEFENDANT AS THE PERPETRATOR OF THE OFFENSE, WAS LACKING IN PROBABLE CAUSE AND THE COURT FURTHER ERRED IN FAILING TO FIND A FRANKS v. DELAWARE VIOLATION, ON THE BASIS OF THE FALSE AND MISLEADING NATURE OF THE EYE-WITNESS IDENTIFICATION, AS SET FORTH IN THE STATEMENT OF FACTS/REVIEW OF INFORMATION FOR PROBABLE CAUSE DETERMINATION, WHICH WAS ATTACHED TO THE ARREST WARRANT.
 EIGHTH ASSIGNMENT OF ERROR THE COURT'S RULING FINDING PROBABLE CAUSE TO ARREST THE DEFENDANT WAS ERRONEOUS, EITHER ON THE BASIS OF THE ALLEGED ADMISSION BY THE DEFENDANT TO THE CIVILIANS/INFORMANT, OR ON THE BASIS OF THIS ALLEGED ADMISSION AND THE PURPORTED EYEWITNESS IDENTIFICATION BY A WITNESS TO THE OFFENSE.
In these two assignments of error DeLeon challenges the validity of his arrest. Specifically, he argues that the warrant for his arrest was invalid because the affidavit submitted in support of that warrant failed to establish probable cause for his arrest. Therefore, DeLeon asserts that the trial court should have suppressed all evidence obtained as a result of his unlawful arrest as fruit of the poisonous tree.
Crim.R. 4(A)(1) governs the issuance of arrest warrants, and provides in part:
 If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant * * * shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.
 The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. * * *
To have probable cause, the officer issuing the warrant must have sufficient information derived from a reasonably trustworthy source to warrant a prudent man in believing that a felony has been committed and that the accused committed it. State v. Timson
(1974), 38 Ohio St.2d 122, syllabus.
In this case Det. Burke submitted along with the complaint an affidavit which set forth two separate basis for finding probable cause to arrest DeLeon. First, that DeLeon had been identified as the perpetrator of the shooting offense by an eyewitness to that offense. Second, that DeLeon had admitted to a citizen-informant his involvement in this shooting offense.
The eyewitness to the shooting was Tashia Benson. She identified DeLeon from a photospread as the shooter, but she told police that she would need to see him in person to be "100% sure." Benson was not absolutely certain in her identification of DeLeon, and she expressed that uncertainty to both Det. Burke and Det. Davis.
DeLeon argues that Benson's tentative identification of him is insufficient to constitute probable cause for his arrest. DeLeon further argues that because Det. Burke knew that Benson was not completely certain in her identification of DeLeon, Det. Burke's statement in the warrant affidavit that Benson had identified DeLeon as the perpetrator of the shooting offense, was knowingly and intentionally false and misleading, and/or made with reckless disregard for the truth. Franks v. Delaware (1978),438 U.S. 154; State v. Roberts (1980), 62 Ohio St.2d 170. DeLeon asserts that Det. Burke's false and misleading statement was material to the probable cause determination here and that without it the affidavit is insufficient to establish probable cause.
The question presented is whether, in examining the totality of the circumstances, the clerk of court that issued the warrant had a substantial basis to conclude that probable cause existed.State v. George (1989), 45 Ohio St.3d 325. The standard of probable cause is a fair probability, not a prima facie showing of criminal activity. Id. Probable cause determinations should be accorded great deference by reviewing courts, and doubtful or marginal cases should be determined by the preference accorded to warrants. Illinois v. Gates (1983), 462 U.S. 213.
Though Tashia Benson was not 100% positive of her identification of DeLeon, that degree of certainty is not required for probable cause. Indeed, witnesses often express such a reservation when viewing "mug shots." Nevertheless, Benson's identification was sufficiently reliable that its inclusion in the affidavit for the arrest warrant did not constitute a statement that was knowingly and intentionally false and/or made with reckless disregard for the truth. Certainty is only one of several factors to be considered in determining the reliability of a pretrial identification. State v. Moody (1978), 55 Ohio St.2d 64.
Benson had a good opportunity to observe DeLeon at the time of the shooting, and her physical description of him and his clothing was corroborated by another witness to that shooting. When police initially showed Benson four different photospreads, none of which contained a photograph of DeLeon, she was unable to identify anyone depicted as the shooter. After Det. Burke received information from the citizen-informant identifying DeLeon as the shooter, Burke put together a photospread which included DeLeon's photograph. When Det. Burke showed that photospread to Benson, she identified DeLeon as the shooter.
On this record no Franks v. Delaware violation has been demonstrated. Tashia Benson's identification of DeLeon, standing alone, is sufficient to establish probable cause for his arrest.
With respect to the second basis set forth in Det. Burke's affidavit for finding probable cause to arrest DeLeon, that DeLeon had admitted to a citizen-informant his involvement in the shooting, DeLeon complains that Burke failed to indicate whether this informant was credible, whether his information was reliable, or even what the basis of that information may have been.
Although Det. Burke recited in his affidavit that he did verify or corroborate the informant's information, he did not explain how he did that. Accordingly, DeLeon argues that the information received from this citizen-informant was not sufficient to establish probable cause for his arrest. DeLeon also argues that even when this information is combined with Benson's uncertain photo identification that is still not sufficient to establish probable cause.
Unlike information received from police-informants, who themselves are involved in criminal activity, or informants who remain anonymous, information received from known ordinary citizens which is based upon their personal knowledge is presumed to be credible and reliable. State v. Claiborne (January 24, 1997), Montgomery App. No. 15964, unreported; State v. Garner
(1995), 74 Ohio St.3d 49. DeLeon's admission to the citizen-informant in this case that he was involved in this shooting incident is sufficient, standing alone, to establish probable cause for DeLeon's arrest.
Either Benson's identification of DeLeon or the admission DeLeon made to the citizen-informant, both of which were set forth in the affidavit for the arrest warrant, are independently sufficient to constitute probable cause for DeLeon's arrest. Therefore, the arrest warrant in this case was clearly valid.
The seventh and eighth assignments of error are overruled.
 NINTH ASSIGNMENT OF ERROR THE CUMULATIVE EFFECT OF THE ERRORS SET FORTH ABOVE HAVE DEPRIVED THIS DEFENDANT OF HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL EVEN THOUGH ANY SINGLE ERROR, STANDING ALONE, WOULD NOT CONSTITUTE A SUFFICIENT REASON FOR REVERSAL OF THE DEFENDANT'S CONVICTION.
In his final assignment of error DeLeon argues that while any one of the errors in this case may not individually constitute reversible error, the cumulative effect of all of those errors denied him a fair trial.
As we noted in our disposition of the assigned errors, the errors, if any, occurring during the trial of this case were individually harmless beyond a reasonable doubt. Thus, they are cumulatively harmless as well.
The ninth assignment of error is overruled.
Having overruled all of DeLeon's assignments of error, the judgment of the trial court will be affirmed.
 ____________________ GRADY, P.J.
BROGAN, J. and WOLFF, J., concur.